546 So.2d 1365 (1989)
STATE of Louisiana
v.
Donnell J. CARROLL.
No. 88-KA-2362.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 1989.
Harry F. Connick, Dist. Atty., Beryl McSmith, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State of La.
Martin E. Regan, Jr., New Orleans, for defendant-appellant, Donnell Carroll.
Before GARRISON, BARRY and KLEES, JJ.
KLEES, Judge.
On August 5, 1988 the defendant Donnell J. Carroll was charged by bill of information with possession with intent to distribute cocaine, a violation of R.S. 40:967. He pled not guilty at his arraignment on August 16, 1988 and was tried by a jury on October 13, 1988 and found guilty as charged. He was sentenced on October 21, 1988 to nine years at hard labor with credit for time served. He now appeals.
*1366 STATEMENT OF FACTS:
On July 14, 1988 at approximately 9:30 p.m. Officers Harrison and Bardy of the New Orleans Police, Street Crimes Unit received information over the telephone that led them to set up surveillance of the intersection of Apple and Eagle Streets to look for a subject called "Junior," a/k/a Donnell Carroll, defendant herein, who would be traveling in a new white Mercedes. Harrison and Bardy set up surveillance at approximately 10:00 p.m. about one and one half blocks from the intersection in an unmarked police car. Harrison watched the area with binoculars. He had previously seen the defendant in the Mercedes which was easily recognizable because of the customized work which had been done on it. At first, the officers merely observed eight to ten teenagers at the intersection standing on the corner and milling around. About ten minutes into the surveillance, however, the white Mercedes pulled up to the intersection on Apple Street. One of the teenagers who had been standing on the corner approached the car and leaned into the driver's window. The officers decided to approach the Mercedes in their car to see if any drug transactions were occurring. As they approached they saw that two people were in the Mercedes. Carroll was driving the car with one passenger. When they were within twenty feet of the Mercedes, the individual who had been on the outside of the car leaning into the driver's window looked up, saw the officers and began backing away from the car.
The officers recognized this individual as Dwayne Davis who had been arrested at the same intersection two and one half weeks earlier for possession with intent to distribute cocaine. As the officers continued to approach, the defendant turned his car in an effort to go around them. The officers consequently turned their car in the same direction to cut off the defendant and exited their car. As they exited, they observed the defendant move his hands toward the center of the dashboard area. Officer Harrison yelled "Let me see your hands and step out of the car." The defendant and the passenger got out of the car, were patted down by the officers for weapons and asked to step to the rear of the car while being advised by the officers that they were under investigation for possession of cocaine.
Officer Harrison then got into the Mercedes and examined the panel below the radio. After noticing that the panel was loose, he pulled the panel off finding therein one large bag containing sixty six small bags of cocaine. The Officer also located the registration papers for the car, finding that the car was registered to defendant's mother. The defendant was subsequently arrested for possession with intent to distribute cocaine.
Errors Patent:
A review of the record for errors patent reveals none.
Assignment of Error No. 1:
The defendant contends that the trial court erred in denying his motion to suppress the evidence, cocaine, seized from the hidden compartment in defendant's automobile without a warrant. He contends that probable cause and exigent circumstances must exist before a warrantless automobile search can be conducted. Since exigent circumstances did not allegedly exist, he contends that the search was unconstitutional.
These same issues have already been raised by defendant in a supervisory writ filed in response to the trial court's denial of his pre-trial motion to suppress the evidence. This court denied writs finding that under U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) the search was constitutional because the officers had probable cause to search the car for contraband. State v. Carroll, No. 88-K-1745.
This court gives "great deference to its pretrial decisions on admissability, unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneously and produced an unjust result." *1367 State v. Johnson, 438 So.2d 1091, 1104 (La.1983); State v. Bianchini, 513 So.2d 332 (La.App. 4th Cir.1987); State v. Denis, 468 So.2d 12 (La.App.4th Cir.1985).
In this case, the defendant raises the same arguments as before. No new evidence has come out that warrants changing this court's original ruling. This assignment of error is without merit.
Assignment of Error No. 2
The defense contends that the trial court erred in refusing to grant a mistrial when the prosecutor elicited from the testifying officer that the defendant did not make any statements to him while under custodial arrest.
The record reflects that the State, after ascertaining from the testifying officer that the defendant was read his Miranda rights after arrest and understood them, then asked the officer, if the defendant, after being read his rights, made any statements to the officer. The officer responded "No". The State did not pursue this response, but began to ask the officer another unrelated question regarding in what parish the events leading up to defendant's arrest occurred. The defense interrupted this question to object to the prior question by the State regarding whether the defendant had made any statements to the officer after the officer read him his Miranda rights. The judge sustained the objection. The defense then moved for a mistrial, which the court denied. Consequently, the defense asked the court to admonish the jury to disregard the response given by the officer, that the defendant had remained silent after being read his Miranda rights.
Accordingly, the judge gave the jury the following admonishment:
Ladies and Gentlemen, you are to disregard the last comment made by the officer. You are not to attach any significance to the fact that the accused at the time he was arrested did not make any statement to the police. He's under no obligation to make a statement. In fact, he has a right to remain silent. You are not to consider or in any way hold that fact against the accused. You are to disregard the statement made by the officer with regard to that. The District Attorney is also admonished. I want no further questioning along those lines, Miss Goebel. That's extremely inappropriate. Proceed.
C.Cr.P. art. 770 provides:
Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(3) The failure of the defendant to testify in his own defense; or
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
C.Cr.P. art. 771 provides:
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person, other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

*1368 In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In State v. Smith, 336 So.2d 867 (La. 1976), the defense on appeal contended that the trial court erred in refusing to grant its motion for mistrial based upon a comment made by the prosecuting attorney during the direct examination of the arresting officer in an attempt to summarize the officer's testimony. The prosecutor stated that the defendant had "refused to give a statement" when he was under custodial arrest. The defense objected and moved for a mistrial contending that a mandatory mistrial was called for under C.Cr.P. art. 770. C.Cr.P. 770 requires a mistrial when reference is made to defendant's failure to testify. The defense contended that provision included references to defendant's silence during custodial arrest, as made by the prosecutor in this case, as well as defendant's silence at trial. The trial court denied the motion. The decision does not reflect that an admonishment to the jury was given by the judge to disregard this comment.
On appeal, the Smith court held that the provision in C.Cr.P. art. 770 mandating mistrial for a reference to defendant's failure to testify referred to defendant's failure to testify at trial, not to defendant's silence during custodial arrest. However, the court further stated that defendant would still be entitled to a mistrial under C.Cr.P. art. 771, or at least an admonishment by the judge to the jury, if the comment deprived the defendant of a fair trial. Finding that the reference by the attorney was "incidental and inadvertent" and there was no "indication of the deliberate intent of the State to inject or exploit the issue" the appellate court found that the trial court did not abuse its discretion in denying the motion for mistrial.
In State v. Montoya, 340 So.2d 557 (La. 1976), the defendant committed armed robbery of a pharmacy. During direct examination of the arresting officer, the State asked the officer if the officer had asked the defendant after he was arrested where he had gotten the drugs. The officer responded that he had asked the defendant, but the defendant did not answer. The defense objected to the question, but did not move for a mistrial. The record did not indicate that the judge admonished the jury.
On appeal, the Montoya court found that the reference made to defendant's silence during custodial arrest was reversible error in that it violated the defendant's constitutional rights to remain silent under Miranda. The court relied primarily upon Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) where the United States Supreme Court ruled that the State could not use a defendant's silence during custodial arrest to impeach defendant's exculpatory testimony at trial. The Montoya court relied on the following part of the Doyle decision:
"The warnings mandated by [Miranda], as a prophylactic means of safeguarding Fifth Amendment rights, see Michigan v. Tucker, 417 U.S. 433, 443-444, 94 S.Ct. 2357, 2363-2364, 41 L.Ed.2d 182 (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestte's exercise of these Miranda rights. Thus, every post-arrest silence is insoluably ambigious because of what the State is required to advise the person arrested. See United States v. Hale, 422 U.S. [171], at 177, 95 S.Ct. [2133] at 2137 [45 L.Ed.2d 99 (1975)]. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who received the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process *1369 to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. Mr. Justice White, concurring in the judgment in United States v. Hale, 422 U.S. at [171] 182-183, 95 S.Ct. [2133] at 2139 [45 L.Ed.2d 99] put it very well: `... when a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if the wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony ... Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from Miranda warnings that this would not be the case.'" 426 U.S. at 617, 96 S.Ct. at 2245, 49 L.Ed.2d at 97-98. (Footnotes omitted.)
In Montoya, the defendant did not take the stand, as in Doyle, so that the State's reference to defendant's custodial arrest silence in Montoya was not used to impeach the defendant's testimony. However, the Montoya court found that the reasoning in Doyle should apply with even stronger force when a defendant does not take the stand. The Montoya court stated:
[1] In the instant case the defendant did not take the stand. Thus, there is even less justification here for the State to call attention to his silence at the time of arrest than there was in Doyle, because the argument cannot be made that he was under cross-examination and thus fair game for impeachment by use of his silence at the time of his arrest. Therefore, we conclude it was clearly reversible error for the trial court to permit the State to use the arrested person's silence against him at trial. Doyle v. Ohio, supra; cf. United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). Id. at 560.
Montoya does not discuss C.Cr.P. arts. 770 and 771. Nor does it discuss the Smith decision, discussed supra which appears to be contradictory to it. Taken by itself, Montoya appears to hold that reference to a defendant's custodial arrest silence is unqualifiedly unconstitutional and mandates a mistrial for that reason. However, later decisions indicate that whether reference to a defendant's silence during custodial arrest warrants reversal depends upon the facts of the case and may under some situations constitute harmless error.
In State v. Hicks, 483 So.2d 1200 (La. App. 4th Cir.1986), the defendant was convicted of second degree murder. On appeal, he contended that the trial court erred in denying his motion for a mistrial because the State, during direct examination of the investigating officer, elicited from the officer that the officer had read the defendant his Miranda rights after which the defendant told him he did not want to make a statement, but instead wanted to consult with his attorney. The record does not reflect that the judge admonished the jury. The defense contended that the statement was an improper comment on his right to remain silent and constituted reversible error under Doyle. This Court held that the trial court did not err in denying the motion for mistrial. This court found that while the complained of reference constituted error, the error was not reversible error because the evidence of defendant's guilty was overwhelming and because the "only real issue in the trial, that of defendant's sanity, was not affected by this improper question." Id. at 1202.
In State v. Carmouche, 499 So.2d 1227 (La.App. 4th Cir.1986), during the direct examination of the arresting officer by the State the following testimony was elicited:
Q. When you say you picked him up, tell the members of the jury exactly what you did?
A. I went over to the Lockup and I brought him back to the station, typed up *1370 the necessary papers to have him booked, and then brought him back to the Lockup under arrest.
Q. Did you tell him what his rights were?
A. Yes, I did.
Q. What rights are these?
A. I advised him of his constitutional rights. I used a little card. I don't happen to have it on me, but it's down in the car.
Q. Did he make any statement?
A. No, he didn't make any statement.
BY MR. MOSELEY:
No further questions. Id. at 1228.
On appeal, the defense contended that the trial court erred in failing to grant a mistrial based upon the reference made to defendant's failure to make any statements to the officer during his custodial arrest. The Court did not rule on the issue because the defense had failed to move for a mistrial or admonition at trial. The Court noted the following, however:
While we do not decide the issue in his case we note that the circumstances of this case do not necessarily support the same result as in Montoya even if there had been timely objection at trial. First, as in State v. Mosley, 390 So.2d 1302 (La.1980), the examination did not stress or emphasize defendant's right to remain silent; and, second, there is some question that this short colloquy at the very beginning of the trial left such an impression on the jurors that it had any effect on their deliberations. If the issue were properly before us these considerations might support the conclusion that the questioning constituted harmless error at worst as in State v. Procell [365 So.2d 484 (La.1978) ], supra. Id. at 1229.
Moreover, later decisions suggest that the original ruling in Smith still applies that, when reference is made to a defendant's silence during custodial arrest, C.Cr.P. art. 771 governs so that it is discretionary with the trial judge whether to merely admonish the jury or to declare a mistrial.
In State v. Kersey, 406 So.2d 555 (La. 1981), the court stated:
Under La.C.Cr.P. art. 771, where the prosecutor or a witness makes a reference to a defendant's post-arrest silence, the trial judge is required, upon the request of the defendant or the state, promptly to admonish the jury. In such cases where the trial judge is satisfied that an admonition is not sufficient to assure the defendant a fair trial, upon motion of the defendant, the trial judge may grant a mistrial.2
2 As pointed out by this court in State v. Smith, 336 So.2d 867 (La.1976), La.C.Cr.P. art. 770, with its mandatory mistrial provision, does not apply to references to defendant's post-arrest silence by the prosecutor or by witnesses, but only applies to references to defendant's failure to testify at trial. La.C.Cr.P. art 771 is the applicable provision concerning the proper remedy where references are made to a defendant's post-arrest silence. Id. at 560.
Similarly, in State v. Procell, 365 So.2d 484 (La.1978), the court stated:
Article 771 of the Code of Criminal Procedure requires only that the trial judge admonish the jury to disregard the quoted remarks and comments. However, no request that the trial judge admonish the jury was made. Granting a mistrial in this situation was therefore discretionary with the trial judge "if [he]... is satisfied that an admonition is not sufficient to assure the defendant a fair trial." La. Code Crim. Pro. art. 771; State v. Smith, 336 So.2d 867 (La.1976). Id. at 491.
Under these decisions, we conclude that the facts in this case do not warrant reversal. The State, after eliciting from the witness that the defendant did not make any statements upon arrest, moved on to another topic. It did not do anything further to emphasize defendant's silence or to try to get the jury to make a negative inference therefrom during the remainder of the trial. The judge also admonished the jury to disregard the comment about defendant's silence. The evidence of defendant's guilt is considerable. For these reasons, *1371 the trial court was within its discretion under C.Cr.P. art. 771 to give an admonishment to the jury instead of declaring a mistrial. This assignment of error is without merit.
Assignment of Error No. 3:
The defense contends that the trial court erred in refusing to grant a mistrial because of an allegedly prejudicial statement made by the State in closing argument. The statement to which the defense objects is as follows:
Remember, don't get baffled by some of the comments made by Mr. Regan. He's a very good attorney. I hope I never get in trouble. If I have to, I hope I can afford an attorney like him, but
The defense objected to the statement and later moved for a mistrial which the trial court denied.
The defense contends that the statement is prejudicial because it implies that the only reason defense counsel agreed to represent the defendant was for the money he would earn in so doing and thus a mistrial should have been declared.
Before an allegedly prejudicial remark requires reversal, the Court must be thoroughly convinced that the jury was influenced by the remark and that it contributed to the verdict. State v. Byrne, 483 So.2d 564 (La.1986). Credit should be given to the good sense and fairmindedness of the jurors. State v. Deboue, 496 So.2d 394 (La.App. 4th Cir.1986).
In this case, it is questionable whether the complained of remark is prejudicial. It is likely common knowledge that defense attorneys receive payment for their services. This fact does not mean that the defense attorney in this case would represent the defendant just for money regardless of the circumstances. It is doubtful that it influenced the jury or contributed to the verdict in light of the other substantial evidence of defendant's guilt. Consequently, this assignment of error is without merit.
Assignment of Error No. 4:
The defense contends that insufficient evidence exists to support the conviction.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charges. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987). In addition, when circumstantial evidence partly forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1983). The elements must be proven such that every reasonable hypothesis of innocence is excluded. R.S. 15:438. R.S. 15:438 is not a separate test from guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The elements of possession of cocaine with intent to distribute are found in R.S. 40:967(A)(1). The State must first prove that the defendant knowingly or intentionally possessed the drug and, then (2) that his knowing and intentional possession was with the intent to distribute. State v. Fernandez, 489 So.2d 345 (La.App. 4th Cir. 1986), writ. den., 493 So.2d 1215 (La.1986).
To show knowing or intentional possession, the State need not prove that a defendant was in actual physicial possession of the drugs; constructive possession is sufficient. State v. Trahan, 425 So.2d 1222 (La.1983). The mere presence of the defendant in the area where the drugs are found is insufficient to prove constructive possession. State v. Johnson, 404 So.2d 239 (La. 1981), cert. den., Kelly v. Louisiana, 456 *1372 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). A person found near contraband may, however, be considered in constructive possession if the illegal substance is subject to his dominion and control. State v. Hall, 524 So.2d 179 (La.App. 4th Cir. 1988), writ. den. 531 So.2d 264 (La.1988). Guilty knowledge is also an essential element of proving possession. State v. Hernandez, 513 So.2d 312 (La.App. 4th Cir. 1987), writ. den., 516 So.2d 130 (La.1987).
Defense contends that the evidence is insufficient because it did not show that defendant knew that the drugs were in the car. The defense points to the facts that the car did not belong to defendant, but to his mother; that the drugs were completely hidden from view behind the panel and no evidence was allegedly presented to show that the defendant knew that they were there; that the officers witnessed no drug transaction between the defendant and anyone else; and, that no drugs were found on the defendant or his passenger.
Contrary to the defendant's argument, sufficient evidence was presented to show that defendant was aware that the drugs were in the car. The defendant reached for the panel where the drugs were hidden when he saw the officers. He then attempted to drive away from the officers. A known drug trafficker was leaning into the defendant's side of the car as the police approached. The drugs were within his reach from the driver's seat. The officers had seen the defendant in the white Mercedes before.
The jury could have reasonably inferred from this evidence that the defendant knowingly possessed cocaine.
The defendant also alleges that the evidence did not show that he had the intent to distribute cocaine. He makes no argument to support this allegation.
Intent to distribute may be inferred from the circumstances. State v. Trahan, 425 So.2d 1222 (La.1983). Circumstantial evidence which is considered in determining intent includes the quantity of the drug, its street value and dosage units. State v. Elzie, 343 So.2d 712 (La.1977); State v. Tornabene, 337 So.2d 214 (La.1976).
In this case, the officers found one bag containing 66 smaller bags of cocaine in the car. Each of the smaller bags sold for $20.00 to $25.00 dollars a piece on the street. Each small bag, according to the uncontradicted testimony presented at trial, constituted a separate dosage usually shared by two people. The total amount of cocaine exceeded the amount used for personal consumption. This evidence is thus sufficient to prove intent to distribute.
This assignment is without merit.
Accordingly for the reasons expressed above the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
BARRY, J., concurs.
BARRY, Judge, concurring.
I believe the defendant is entitled to full appellate review on the validity of the stop and search, even though a writ on the same argument had been denied.
Nonetheless, I find the stop and search valid.